THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>v.<br><br>JESSICA BJARNSON,<br><br>              Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [256] MOTION TO DISMISS COUNT 19**<br><br>Case No. 2:22-cr-00481-DBB<br><br>District Judge David Barlow |

On August 23, 2023, Ms. Jessica Bjarnson filed her Motion to Dismiss Count 19[1] of the Superseding Indictment charging her, and two others, with contempt under 18 U.S.C. § 401(3).[2] The gist of Ms. Bjarnson's Motion is that the executive branch of the United States government may not prosecute her under Section 401without the court first initiating such prosecution. For the following reasons, the court denies Ms. Bjarnson's Motion.

## BACKGROUND

On March 29, 2023, Ms. Bjarnson and nine others were indicted by a federal grand jury on a number of charges.[3] Relevant here is that the government alleges that Ms. Bjarnson and two of her co-defendants were "subject to a Stipulated Order for Permanent Injunction entered by Judge Dee Benson" in a prior case brought by the Federal Trade Commission.[4] The Injunction prohibited Ms. Bjarnson from engaging in several activities, including telemarketing, making

---

[1] Mot. to Dismiss Count 19 ("Def.'s Mot."), ECF No. 256.
[2] Superseding Indictment ¶¶ 59–66, ECF No. 176.
[3] *Id.* ¶¶ 39–66.
[4] *Id.* ¶ 60.

false statements to obtain payment processing services, and avoiding fraud or risk monitoring programs.[5] It also required Ms. Bjarnson to submit a compliance report periodically.[6] The government alleges that Ms. Bjarnson and two of her co-defendants subject to the Injunction violated the terms of the Injunction, and that these violations constitute contempt under 18 U.S.C. § 401.[7]

On August 23, 2023, Ms. Bjarnson filed the present Motion to Dismiss,[8] and the government filed its opposition on September 6, 2023.[9] Ms. Bjarnson filed her reply on September 25, 2023.[10] Having carefully considered the relevant filings, the court finds that oral argument is not necessary to the resolution of this issue.[11]

## ANALYSIS

Ms. Bjarnson argues that the text and history of 18 U.S.C. § 401 suggest that only courts may initiate contempt prosecutions.[12] The government responds primarily by emphasizing that the statutory text does not actually support Ms. Bjarnson's argument, and that Article II of the U.S. Constitution and statutory authority establish the executive branch's ability to prosecute crimes.[13]

---

[5] *Id.* ¶¶ 61–63.
[6] *Id.* ¶ 64.
[7] *Id.* ¶ 66.
[8] Def.'s Mot.
[9] United States' Opp'n to Mot. to Dismiss Count 3 ("Gov.'s Opp'n"), ECF. No. 275.
[10] Defendant's Reply to Government's Opp'n to Defendant's Mot. to Dismiss Count 19 (Def.'s Reply"), ECF No. 293.
[11] Notably, the court heard oral argument from counsel for Ms. Bjarnson on an identical issue in a different case. *See* ECF No. 364, *United States v. Baker*, No. 2:20-cr-00301-DBB (D. Utah Nov. 6, 2023). The court has dealt with the issues in both cases in largely identical ways, though additional grounds were urged and argued in the other case. *See* Memorandum Decision and Order Denying [341] Defendant's Motion to Dismiss Count 3, ECF No. 365, *United States v. Baker*, No. 2:20-cr-00301-DBB (D. Utah Nov. 8, 2023).
[12] Def.'s Mot. 2–8.
[13] Gov. Opp'n 2–7.

### A.  The Executive's Authority to Prosecute

Because Ms. Bjarnson's argument is that the executive branch lacks the statutory authority to prosecute her absent a request from the court, the court begins with a brief overview of the sources that establish the power to prosecute generally and the procedures that typically govern the initiation of a prosecution.

Article II of the U.S. Constitution vests the power to execute the laws in the executive branch, which includes the power to prosecute crimes within the jurisdiction of the United States.[14] Congress has authorized the appointment of United States attorneys and assistant United States attorneys in order to facilitate enforcement of federal criminal laws.[15] 28 U.S.C. § 547 reads: "Except as otherwise provided by law, each United States attorney . . . shall—(1) prosecute all offenses against the United States."[16] The word "offense" appears innumerable times in Title 18 and Title 28 but is nowhere defined in a way that would aid resolution of this issue.[17] The plain meaning of "offense" is "an infraction of law,"[18] or "an illegal act or omission; a punishable crime."[19] In addition, nearly every substantive provision of Title 18 proscribes

---

[14] *See* U.S. Const. art. II; *United States v. Nixon*, 418 U.S. 683, 694 (1974) ("Under the authority of [Article II], Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.").

[15] 28 U.S.C. §§ 541, 542, 547; *see also The Confiscation Cases*, 74 U.S. 454, 457 (1868) ("Public prosecutions . . . are within the exclusive direction of the district attorney.").

[16] 28 U.S.C. § 547(1).

[17] *Cf.* 18 U.S.C. § 19 (defining "petty offense"); *id* § 3172 (defining "offense" for purposes of the Speedy Trial Act); *id.* § 3156 (defining "offense" for purposes of pretrial release statutes).

[18] *Offense*, Merriam-Webster, https://www.merriam-webster.com/dictionary/offense [https://perma.cc/4WVJ-G58B].

[19] *Offense*, Oxford English Dictionary, https://www.oed.com/dictionary/offence_n?tab=meaning_and_use&tl=true#33836185 [https://perma.cc/7TWD-VE66].

certain conduct by stating that such conduct could lead to punishment by a "fine or imprisonment, or both."[20]

The procedure to initiate a criminal prosecution depends on the type of crime. For felonies, the Fifth Amendment requires an indictment by a grand jury before a prosecution may commence.[21] This procedure has been codified in the Federal Rules of Criminal Procedure: "An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year."[22] And because the Fifth Amendment only requires a grand jury indictment for felonies, the Federal Rules permit prosecution for a misdemeanor or petty offense to be commenced by "indictment, information, or complaint, or "citation or violation notice."[23]

Having briefly outlined the executive's authority and the procedure for charging crimes generally, the court turns to whether contempt prosecutions must be handled differently than other crimes.

**B. Contempt**

Ms. Bjarnson argues that the text, history, and purpose of 18 U.S.C. § 401 show that contempt prosecutions must be initiated by federal courts.[24]

---

[20] *See, e.g.*, 18 U.S.C. § 81 (arson); *id.* § 201 (bribery of a public official); *id.* § 38 (fraud involving aircraft); *id.* § 113 (assaults).
[21] U.S. Const. am. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."); *see Mackin v. United States*, 117 U.S. 348, 354 (1886) ("'Infamous crimes' are thus, in the most explicit words, defined to be those 'punishable by imprisonment in the penitentiary.'"); *Stirone v. United States*, 361 U.S. 212, 215 (1960) ("The crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment").
[22] Fed. R. Crim. P. 7(a)(1).
[23] Fed. R. Crim. P. 58(b).
[24] Def.'s Mot. 2–8.

1.  **Section 401**

The court begins with the text of the statute proscribing contempt. 18 U.S.C. § 401(3) reads:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.[25]

Unlike for other felony crimes, the Federal Rules of Criminal Procedure do not require that a contempt proceeding be initiated by a grand jury indictment. Rule 42 of the Federal Rules of Criminal Procedure makes clear that a contempt occurring outside the presence of the court "may be punished . . . after prosecution on notice," which requires that the court give notice and request government prosecution.[26] In addition, Rule 42 states that "the court . . . may summarily punish" contemptuous conduct occurring in the presence of the court.[27] In other words, Rule 42 codifies the procedure a court must follow if it seeks to initiate a contempt prosecution or punish contempt summarily.[28] Likewise, Rule 7 establishes that contempt is an exception to the general rule requiring prosecution by indictment for felonies.[29] However, as explained below, Rule 42 is permissive; it does not mandate that courts initiate contempt proceedings. These Rules comport with Supreme Court precedent. In *Green v. United States*, the Supreme Court held that criminal

---

[25] 18 U.S.C. § 401(3).

[26] Fed. R. Crim. P. 42(a).

[27] Fed. R. Crim. P. 42(b).

[28] As the 1944 Advisory Committee Note to Subdivision (a) makes clear: "This rule is substantially a restatement of existing law." (citing *Ex parte Terry*, 128 U.S. 289 (1888); *Cooke v. United States*, 267 U.S. 517, 534–37 (1925)).

[29] Fed. R. Crim. P. 7(a)(1). It should be observed that contempt may be considered a felony, depending on the type of punishment imposed. *See Bloom v. Illinois*, 391 U.S. 194, 198 (1968) ("[C]riminal contempt is a petty offense unless the punishment makes it a serious one."); *see also Frank v. United States*, 395 U.S. 147, 149–50 (1969).

contempt "need not be prosecuted by indictment under the Fifth Amendment."[30] And the
Supreme Court has long upheld summary contempt,[31] while at the same time mandating different
procedures depending on whether contempt was committed in or outside the presence of the
court.[32]

The court next addresses Ms. Bjarnson's textual, historical, and purposivist arguments in
turn.

### *Text*

Ms. Bjarnson argues that by specifying in Section 401 that "the court" has the power to
punish contempt, Congress intended to exclude this power from all other governmental actors.[33]
But as commentators have pointed out, the negative implication canon "properly applies only
when [the thing specified] can reasonably be thought to be an expression of all that shares in the
grant or prohibition involved. Common sense often suggests when this is or is not so."[34] Ms.
Bjarnson's negative implication argument must overcome the executive's power to prosecute
"offenses against the United States."

If contempt is an "offense against the United States" for purposes of 28 U.S.C. § 547,[35]
then common sense dictates that by specifying that "[a] court . . . shall have power to punish"
contempts, Congress did not narrow the executive's general prosecutorial power. For starters,

---

[30] 356 U.S. 165, 187 (1958).
[31] *See Bloom*, 391 U.S. at 203–06 (collecting cases).
[32] *Id.* at 204 ("Before the 19th century was out, a distinction had been carefully drawn between contempts occurring within the view of the court, for which a hearing and formal presentation of evidence were dispensed with, and all other contempts where more normal adversary procedures were required.").
[33] Def.'s Mot. 3. Ms. Bjarnson also points out that unlike nearly all other provisions in Title 18, Section 401 is written in active voice, rather than passive voice; it identifies who has the power to punish conduct, rather than simply defining a crime. Def.'s Mot. 4. This merely restates Ms. Bjarnson's negative implication argument.
[34] Antonin Scalia & Bryan A Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 107 (2012).
[35] *Cf. Pendergast v. United States*, 317 U.S. 412, 417 (1943) (holding that contempt is an offense against the United States for purposes of the general statute of limitations).

contempt—like all other crimes listed in Title 18—is punishable "by fine or imprisonment or both."[36] Indeed, the Supreme Court has described contempt as being an offense: "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both."[37] Thus, it is an "offense," within the plain meaning of that word.

Ms. Bjarnson argues that contempt is not committed "against the United States," but instead, is committed against federal courts.[38] But by virtue of being a defined federal crime, contempt is committed against the United States. Additionally, Ms. Bjarnson's proposed distinction between a federal court and the United States is unpersuasive in this context. This court is the United States District Court for the District of Utah. It is an institution of the United States, not some separate entity. The Supreme Court has stated that "the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates."[39] Therefore, because contempt is an "offense against the United States," 28 U.S.C. § 547 gives the power to United States attorneys to prosecute it.[40] In sum, Ms. Bjarnson's negative implication argument is not supported.

---

[36] 18 U.S.C. § 401.

[37] *Bloom*, 391 U.S. at 201.

[38] Def.'s Reply 1–2.

[39] *Bloom*, 391 U.S. at 202; *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 804 (1987) (holding that "attorneys appointed to prosecute a criminal contempt action represent the United States"); *United States v. Providence Journal Co.*, 485 U.S. 693, 700 (1988) (holding that for purposes of the statute establishing who may argue suits on behalf of the United States before the Supreme Court criminal contempt cases are ones "in which the United States is interested").

[40] The government also suggests that by placing contempt in Title 18—itself titled "Crimes and Criminal Procedure"—in 1948, *see* Pub. L. No. 80-772, 62 Stat. 683, 701 (1948), Congress intended that contempt be treated as a crime, and like all crimes, prosecution may commence from a grand jury indictment. It is true that in some circumstances the location of a statute within a code can serve as an indicator of meaning. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (holding that placement of a statute within the probate code, rather than the criminal code, was evidence of the statute being civil rather than criminal in nature); *cf. United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (noting that changes made by the codifier, and not Congress, should be given no weight); *INS v. Nat'l Cntr. For Immigrants' Rights, Inc.*, 502 U.S. 551, 556 (1991) ("[T]he title of a statute or section can aid in resolving

In addition, as the government points out, there is a distinction between the power to "punish," and the power to initiate prosecutions.[41] Section 401 and Rule 42, read in harmony, outline two methods for a court to punish contemptuous conduct. If the contempt occurs within the presence of the court, the court may *punish* that contempt summarily. But if the contempt occurs outside the presence of the court and the court wants the offense prosecuted, the court must give notice and must request *prosecution*. If the court proceeds with the second route, the right to a trial by jury may attach.[42] Only after such a prosecution and conviction may the court *punish* the contempt. Thus, that Section 401 specifies that "the court shall have power to punish" does not clearly exclude other actors (here, a grand jury upon request of the United States Attorney) from initiating prosecution. In short, Ms. Bjarnson's negative implication argument is further eroded by the particular power being granted by the statute. Section 401 and Rule 42 supplement Section 547; they do not supplant it.

In sum, Ms. Bjarnson's textual arguments are unsupported.

*History*

The power of courts to punish contempt was established by Section 17 of the Judiciary Act of 1789.[43] This Act "was intended to do no more than expressly attribute to the federal judiciary those powers to punish for contempt possessed by English courts at common law."[44] In

---

an ambiguity in the legislation's text."). In this case, that Congress itself codified Title 18, and included contempt therein, bolsters the court's conclusion that Section 401 by its plain text defines an offense.
[41] Gov.'s Opp'n 3.
[42] *See Bloom*, 391 U.S. at 207–08.
[43] Pub. L. No. 1-20, § 17, 1 Stat. 73, 83 (1789) ("[A]ll the said courts of the United States shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempt of authority in any cause or hearing before the same.").
[44] *Green*, 356 U.S. at 170.

1831, in response to some courts abusing their contempt power,[45] Congress enacted a statute limiting courts' contempt powers to three circumstances: (1) "the misbehaviour of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice"; (2) "the misbehaviour of any of the officers of the said courts in their official transactions"; and (3) "the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree, or command of the said courts."[46] The 1831 statute remains largely unchanged today. Ms. Bjarnson argues that this history suggests that because Congress meant to curtail the contempt power, not to expand it, prosecution of contempt may not be initiated by the executive branch.[47] But this history only suggests Congress sought to curtail *courts'* use of contempt proceedings[48]; it says nothing about either the *executive's* or the *grand jury's* power.

The common law notwithstanding, there is nothing in the text of Section 401 that suggests that a grand jury may not indict for criminal contempt. To remove such a power from the grand jury and the executive branch and place it in the judiciary alone would seem to require more than merely an absence of a history of grand jury indictment.[49]

Ms. Bjarnson's other historical arguments are likewise without merit. She argues that "Contempt was historically used to punish disobedience; it did not constitute a separate crime."[50]

---

[45] *See Bloom*, 391 U.S. at 202–03 (outlining the history of federal courts' contempt powers).
[46] Pub. L. No. 21-99, § 1, 4 Stat. 487, 487–488 (1831).
[47] Def.'s Mot. 7–8.
[48] *See Bloom*, 391 U.S. at 207 (noting that "courts and legislatures have gradually eroded the power of judges to try contempt of their own authority").
[49] *Cf., e.g.*, *West Virginia v. EPA*, 597 U.S. ---, 142 S. Ct. 2587, 2609 (2022) (noting that separation of powers concerns require a clear statement in some cases); *United States v. Williams*, 504 U.S. 36, 47 (1992) ("[The grand jury] has not been textually assigned . . . to any of the three branches [of government]. It "'is a constitutional fixture in its own right.'"" (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977))).
[50] Def.'s Mot. 7.

But regardless of whether that is true historically, since the late 1960s, the Supreme Court has been clear that "[c]riminal contempt is a crime in the ordinary sense."[51] Therefore, Ms. Bjarnson's historical arguments are unpersuasive.

*Purpose*

Ms. Bjarnson argues that to permit the executive branch to prosecute her for contempt without the court initiating the prosecution itself would be to deprive federal courts of one of their core powers.[52] Not so. Of course, the contempt power is "essential to the preservation of order in judicial proceedings,"[53] and of course contempt is a means by which a court may "vindicate its own authority without complete dependence on other Branches" of government.[54] But the court itself may still summarily punish certain contempts, and may initiate prosecution under Rule 42 and appoint a private prosecutor to prosecute if the executive branch is unwilling or unable to do so. Indeed, a similar argument was once made with regard to whether a jury was required for contempt prosecutions,[55] and the Supreme Court ultimately rejected this line of reasoning.[56] That both the executive and the judicial branches have power to initiate prosecution of contempt does not diminish the court's authority.

In sum, the text, history, and purpose of Section 401 do not suggest that courts possess the exclusive power to initiate contempt prosecutions. Ms. Bjarnson essentially asks the court to

---

[51] *Bloom*, 391 U.S. at 201.
[52] Def.'s Mot. 7; Def.'s Reply 7.
[53] *Ex parte Robinson*, 86 U.S. 505, 510 (1873).
[54] *Young*, 481 U.S. at 796.
[55] *See In re Debs*, 158 U.S. 564, 594–95 (1895) ("[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. . . . To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency.").
[56] *See Bloom*, 391 U.S. at 208–09 ("We place little credence in the notion that the independence of the judiciary hangs on the power to try contempts summarily . . . .").

read Section 401 as: "A court of the United States shall have [the exclusive] power to [initiate contempt proceedings]." In order to remove such a power from the executive branch, the court would have to read the word "exclusive" into the statute, based only on the language that a "court . . . shall have power to punish [contempt]." And this the court cannot do. Just as prosecution of contempt is not "an execution of the criminal law in which *only* the Executive Branch may engage,"[57] so too is it not a power left solely to the courts.

### 2. Rule 42 and 18 U.S.C. § 3148

Ms. Bjarnson points to two other provisions in support of her reading of Section 401: Rule 42 and 18 U.S.C. § 3148.[58] As noted above, the text of both Rule 42 and Rule 7 is permissive. Rule 42 states that "criminal contempt *may* be punished . . . after prosecution on notice"[59]; it does not say "must," as Ms. Bjarnson seems to suggest.[60] In other words, the text of Rule 42 suggests that there are other routes to punishment, aside from prosecution on notice. Rule 42 simply states that if the court seeks to punish contempt, it is bound by the procedure established by Rule 42. Likewise, while Rule 7 carves out an exception for contempt from the requirement that an indictment be issued for felony offenses,[61] it does not suggest that a grand jury indictment cannot be issued for contempt. And while, as noted above, the Supreme Court in *Green* upheld a felony contempt prosecution that was instituted under Rule 42, rather than by

---

[57] *Young*, 481 U.S. at 800.

[58] Def.'s Mot. 5–6.

[59] *See* Fed. R. Crim. P. 42(a).

[60] And to the extent that Ms. Bjarnson suggests that Rule 42 is evidence of the will of Congress, *see* Def.'s Mot. 5, that is simply incorrect. Rule 42 was promulgated according to the delegated rule-making power of the Supreme Court, *see* 55 Stat. 779 (1941). There is nothing in the history of Rule 42 that suggests that Congress had any hand in drafting Rule 42. Therefore, the court cannot read Rule 42 as doing anything but establishing "the procedure for *providing notice* of criminal contempt," *Young*, 481 U.S. at 794, when the court itself seeks to initiate non-summary contempt proceedings.

[61] Fed. R. Crim. P. 7 ("An offense (other than criminal contempt) must be prosecuted by an indictment if it is punishable: (A) by death; or (B) by imprisonment for more than one year.").

grand jury indictment,[62] nothing in *Green*, or any subsequent Supreme Court case for that matter, suggests that Section 401 or Rule 42 removed contempt from the province of the grand jury. Therefore, nothing in the Federal Rules of Criminal Procedure alters the court's reading of Section 401.

The same is true for 18 U.S.C. § 3148. That statute deals with pretrial release violations,[63] and specifies that a "judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release."[64] But as with Rule 42 and Section 401, the language of Section 3148 is permissive; it does not suggest that *only* a judicial officer may commence a prosecution for contempt for a pretrial release violation. Therefore, Section 3148 merely clarifies that contempt is an available sanction for a pretrial release violation, and that a "judicial officer" may commence such a prosecution.

---

[62] *Green*, 356 U.S. at 187.

[63] The text reads:

> (a) Available sanctions. A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

> (b) Revocation of Release. The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release. . . .

> (c) Prosecution for contempt. The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.

18 U.S.C. § 3148.

[64] *Id.* § 3148(c).

### 3. Other Authority

Non-binding precedent is in accord.[65] Nearly every court to have considered the arguments made by Ms. Bjarnson has rejected them. Several Circuits—including the Second,[66] Fourth,[67] Fifth,[68] and the Ninth[69]—have upheld prosecution of contempt by grand jury indictment. Ms. Bjarnson asserts that many of these cases did not thoroughly analyze the text of Section 401 or related provisions.[70] And while that may be true for some of the cases, it does not necessarily deprive these decisions of their persuasive value, especially given the court's independent analysis. That is particularly true given that Ms. Bjarnson cites only one case in support of her Motion,[71] and that case is factually inapposite.

In *In re Amalgamated Meat Cutters*, the Eastern District of Wisconsin was faced with a motion to quash a subpoena duces tecum issued by a grand jury.[72] There, the National Labor

---

[65] Both parties have placed significant emphasis on dicta from the Supreme Court, especially in *Young*. Normally, this court is "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996). However, the Court's decision in *Young* contains a number of potentially conflicting statements, that parties could—and indeed, have, in this case—read in different ways. For example, Ms. Bjarnson emphasizes the statement that "while the prosecution of in-court and out-of-court contempts must proceed in a different manner, they both proceed at the instigation of the court." *Young*, 481 U.S. at 799. On the other hand, the Government prefers the sentence that immediately follows: "[t]he fact that we have come to regard criminal contempt as 'a crime in the ordinary sense,' does not mean that prosecution of contempt must now be considered an execution of the criminal law *in which only the Executive Branch may engage*." *Id.* at 799–800 (cleaned up) (emphasis added). For its part, this court notes that the dueling quotes the parties cite are all taken from a section of the opinion where the Supreme Court is rejecting the claim "that the ability of courts to initiate contempt prosecutions is limited to summary punishment of in-court contempts that interfere with the judicial process." *Id.* at 798. Read in context, *Young* does not suggest, in dicta or otherwise, that the courts are the *only* branch with power to initiate contempt prosecutions.

[66] *United States v. Morales*, 566 F.2d 402, 404–06 (2d Cir. 1977) (upholding indictment for contempt and rejecting that Rule 42 was the exclusive pathway to punishment for contempt).

[67] *United States v. Mensik*, 440 F.2d 1232, 1234 (4th Cir. 1971) (holding an indictment is permissible so long as the notice requirements of Rule 42 are satisfied).

[68] *United States v. Williams*, 622 F.2d 830, 837–39 (5th Cir. 1980) ("[Rule 42] does not purport to vest exclusive authority to initiate contempt charges in the courts. It is merely procedural."); *United States v. Leyva*, 513 F.2d 774, 777–79 (5th Cir. 1975).

[69] *See United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009); *Steinert*, 43 F.2d at 70–71.

[70] Def.'s Mot. 8–12.

[71] *See id.* at 11–12.

[72] 402 F.Supp. 725, 726 (E.D. Wisc. 1975).

Relations Board alleged that a local union was engaged in unlawful conduct and the district judge entered a preliminary injunction barring certain activity.[73] The Board later requested that the district judge institute a prosecution for criminal contempt; the judge referred the matter to the grand jury.[74] The union then filed a motion to quash a subpoena duces tecum directing it to produce records to the grand jury, arguing that the judge's order referring the issue to the grand jury defined the scope of the grand jury's inquiry.[75] In ruling on this latter issue, the court held that because the grand jury lacked independent authority to indict, the grand jury was limited by the judge's order.[76] None of these features are present here, and the court does not find the case to be otherwise helpful.

In sum, Ms. Bjarnson asks the court to read several statutes and rules as conferring the power to initiate contempt proceedings exclusively on federal courts, thereby limiting the executive branch's ability to pursue contempt crimes. But no statute or rule in fact does this. No statute, rule, or binding caselaw suggests that the ordinary procedure for initiating a prosecution—i.e., grand jury indictment—may not be followed for contempt. Instead, as the 2002 Advisory Committee Notes to Rule 7 make clear: "While indictment is not a required method of bringing felony criminal contempt charges, however, it is a permissible one."[77] In addition, the court observes that to adopt Ms. Bjarnson's arguments would needlessly create a significant constitutional issue—whether Congress may categorically remove certain felonies from the scope of the grand jury clause in the Fifth Amendment. In other words, it is one thing to

---

[73] *Id.* at 726–27.
[74] *Id.*
[75] *Id.* at 727, 729.
[76] *Id.* at 736.
[77] Fed. R. Civ. P. 7, Advisory Committee Notes to 2002 Amendments.

say that contempt "*need not* be prosecuted by indictment under the Fifth Amendment,"[78] and quite another to say that contempt *may not* be prosecuted by an indictment, and instead must be prosecuted pursuant to a court's request under Rule 42. Section 401 and Rule 42, and the host of other related provisions, merely authorize courts to initiate contempt prosecutions and establish certain procedures that must be followed if a court does so; they do not mandate that a court-initiated prosecution is the exclusive route.

### ORDER

Accordingly, the Court DENIES Ms. Bjarnson's Motion to Dismiss Count 3 of the Superseding Indictment.

Signed November 8, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[78] *Green*, 356 U.S. at 187 (emphasis added).